894 A.2d 502

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Eric Jag KAPOOR.

Misc. Docket AG Nos. 3 & 9, Sept. Term, 2005.

Court of Appeals of Maryland.

March 9, 2006.

508

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n, Fletcher P. Thompson, Asst. Bar Counsel), for petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16–751,[1] filed two Petitions For Disciplinary Or Remedial Action against Respondent, Eric Jag Kapoor, on April 4 and May 6, 2005, respectively. The Petitions allege that Respondent, who was admitted to the Bar of this Court on December 11, 2001, violated several Maryland Rules of Professional Conduct ("MRPC"), specifically, 1.1 (Competence),[2] 1.2 (Scope of Rep-

---

1. Although not applicable here, the MRPC were changed by order of this Court dated February 8, 2005, effective July 1, 2005.

   Maryland Rule 16–751(a) provides:
   (a) Commencement of disciplinary or remedial action. (1) Upon approval or direction of the [Attorney Grievance Commission], Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.1 provides:

   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

resentation),[3] 1.3 (Diligence),[4] 1.4 (Communication),[5] 1.5 (Fees),[6] 1.15 (Safekeeping Property),[7] Rule 3.3(a) (Candor Toward the Tribunal),[8] Rule 5.5(a) (Unauthorized Practice of

---

3.  Rule 1.2 provides in relevant part:
    (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
    (b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.
    (c) A lawyer may limit the objectives of the representation if the client consents after consultation.

4.  Rule 1.3 provides:
    A lawyer shall act with reasonable diligence and promptness in representing a client.

5.  Rule 1.4 provides:
    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6.  Rule 1.5 provides, in relevant part:
    A lawyer's fee shall be reasonable.

7.  Rule 1.15 provides, in relevant part:
    (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
    (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

8.  Rule 3.3 provides, in relevant part:

Law),[9] 8.1 (Bar Admission and Disciplinary Matters),[10] 8.4 (Misconduct),[11] Maryland Rule 16–604 (Trust Account–Required Deposits),[12] § 10–304 of the Business Occupations and

---

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

9. Rule 5.5 provides, in relevant part:

A lawyer shall not:

(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

10. Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of the information otherwise protected by Rule 1.6.

11. Rule 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

12. Maryland Rule 16–604 provides:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is

Professions Article of the Maryland Code (2000, 2004 Repl. Vol.) (Deposit of Trust Money),[13] and § 10–306 of the Business Occupations and Professions Article of the Maryland Code (2000, 2004 Repl.Vol.) (Misuse of Trust Money).[14] In accordance with Maryland Rules 16–752(a) and 16–757(c),[15] we referred the petition to Judge John P. Miller of the Circuit Court for Baltimore City for an evidentiary hearing and to make findings of fact and conclusions of law. On August 29, 2005, and October 5, 2005, Judge Miller held hearings and on October 13, 2005, issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that Eric Jag Kapoor had violated MRPC 1.2(a), 1.3, 1.5(c), 1.15(a)

---

made payable solely to a client or third person and is transmitted directly to the client or third person.

**13.** Section 10–304 of the Business Occupations and Professions Article provides:

(a) General requirement.—Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

(b) Exceptions–Direction of court.—Subsection (a) of this section does not apply if there is a court order to the contrary.

(c) Same–Real estate transaction.—Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction.

**14.** Section 10–306 of the Business Occupations and Professions Article provides:

Misuse of trust money. A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**15.** Maryland Rule 16–752(a) states:

(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk is responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:

The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. . . .

and (b), 3.3(a), 5.5(a), 8.1(a) and (b), 8.4(a), (b), (c) and (d), Maryland Rule 16–604, and §§ 10–304 and 10–306 of the Business Occupations and Professions Article. Oral argument before this Court occurred on February 2, 2006, after which we filed a per curiam order disbarring Respondent forthwith on February 3, 2006. This opinion sets forth the reasons for Mr. Kapoor's disbarment.

## BACKGROUND

This disciplinary matter arises from Respondent's representation of Mr. Christopher O'Brien in the settlement of a personal injury case, Respondent's agreement to represent Ms. Yvonne Shirk in a bankruptcy matter while Respondent was decertified from the practice of law, and Respondent's representation of Ms. Bolanle Sanya in the settlement of a personal injury case. As to Mr. O'Brien's case, Respondent settled his client's claim for $20,000 without his authorization or knowledge and deposited the check in a bank account titled in Respondent's name and his mother's name. During Bar Counsel's investigation of the matter, Respondent made various false statements to Bar Counsel and his client in an attempt to conceal his misappropriation of the settlement proceeds. In the case of Ms. Yvonne Shirk, Respondent was decertified from the practice of law on April 8, 2003, and was reinstated on June 10, 2004. On October 28, 2003, prior to his reinstatement, Respondent practiced law by agreeing to represent Ms. Shirk in a bankruptcy matter and accepted $50 in advance against his fee of $350.00. He did not deposit the fee in a trust account, but instead cashed the check and spent the money. When Ms. Shirk complained to Bar Counsel about Respondent's representation, he attempted to conceal his representation of Ms. Shirk and stated that she had not given him any money. As a result of an investigation by the Attorney Grievance Commission into these matters, Respondent was charged with violating the Rules of Professional Conduct.

With respect to the complaints of Christopher P. O'Brien, Bar Counsel, and Ms. Yvonne Shirk, the hearing judge made the following findings of fact and conclusions of law:

## FINDINGS OF FACT & CONCLUSIONS OF LAW

"The Court finds that the following facts have been established by clear and convincing evidence:

"I.    *Complaint of Christopher P. O'Brien*

"A.    *Findings of Fact*

"Respondent, Eric Jag Kapoor, was admitted to the Bar of the Court of Appeals of Maryland on December 11, 2001. From the time of his admission and during the time relevant to this matter, Respondent practiced law as a partner in the law firm of Robaton & Kapoor in Baltimore City.

"On January 10, 2002, complainant, Christopher P. O'Brien, was in an automobile accident in which he suffered injuries to his head. At the end of June or beginning of July 2002, Mr. O'Brien retained Respondent Kapoor to represent him in his efforts to obtain damages from the other driver involved in the accident. The parties entered into a contingency fee agreement. Pursuant to this agreement, Respondent was to receive as his fee one-third of the amount recovered on behalf of Mr. O'Brien. The contingency fee agreement was not reduced to writing.

"On August 19, 2003, Respondent settled Mr. O'Brien's personal injury case with defendant driver's insurance company, GEICO, for $20,000, without Mr. O'Brien's knowledge or authorization. On the same day, GEICO, in confirmation of its conversation with Respondent, sent Respondent the following documents: a letter confirming the settlement, a check for $20,000, and a release intended for Mr. O'Brien's execution.

"The settlement check was made payable to the order of 'Christophe P. O'Brian [sic] and [his] attorney Eric J. Kapoor, Esq.' When Respondent received the check, he forged Mr. O'Brien's signature and deposited the check into a personal account located at M & T Bank and titled in the name of the Respondent and his mother. At that time, Respondent did not communicate to Mr. O'Brien

that he had either received, endorsed, or deposited the settlement check. During the same time period, Mr. O'Brien alleged that Respondent did not respond to his calls or requests for information regarding the case. However, according to the phone records summary for Law Offices of Kapoor & Robaton during the billing period between August 3, 2003 and September 2, 2003, the following calls were placed to Mr. O'Brien's cell phone: August 18, 2003 at 8:03 pm, lasting 7 minutes and 33 seconds; August 20, 2003 at 12:46 pm, lasting 1 minute and 12 seconds; 3 calls on August 21, 2003 at 1:50 pm, 7:6 pm and 9:20 pm, each lasting 1 minute and 2 seconds, minute, and 9 minutes and 1 second, respectively; 2 calls on August 25, 2003 at 2:27 pm and 2:28 pm, lasting 1 minute and 1 minute and 8 seconds, respectively; August 27, 2003 at 7:53 pm, lasting 1 minute and 13 seconds; 2 calls on August 28, 2003 at 4:50 pm and at 5:30 pm, each lasting 1 minute.

"After the check was deposited into the M & T account, Respondent proceeded to reduce the account balance below $13,333.33 (amount to which Mr. O'Brien was entitled according to the terms of the contingency fee agreement).

"In September 2003, Mr. O'Brien spoke with Melanie King, a GEICO insurance adjuster in charge of Mr. O'Brien's matter, who informed him that the case was settled in August and that the matter was considered closed. On October 9, 2003, Respondent wrote Mr. O'Brien a letter, asserting that Mr. O'Brien had, in fact, authorized Respondent's receipt of GEICO's offer and the $20,000 settlement check. It was not until on or about April 8, 2004 that Respondent properly deposited the funds actually due Mr. O'Brien into a trust account.

"On April 9, 2004, as a result of the aforementioned events and Respondent's conduct, Mr. O'Brien filed suit against the Respondent and his partner, Mr. David Robaton, Esq. O'Brien's complaint alleged unauthorized settlement of his case and conversion of his funds as grounds

for relief. In October 2004, upon final settlement of his lawsuit against Respondent, Mr. O'Brien received money due to him from the personal injury case.

"On May 7, 2004, during Petitioner's investigation of the complaint filed by Mr. O'Brien *against* the Respondent, Respondent gave a Statement Under Oath. When asked why the $20,000 settlement check was dated August 19, 2003, if, as alleged in Respondent's October 9, 2003 letter Mr. O'Brien did not authorize the settlement until August 22, 2003, Respondent testified that GEICO had sent him the $20,000 check in mere hopes that Mr. O'Brien would accept it as full and final settlement of his matter. Because the check was sent after Respondent, without authority, had accepted GEICO's offer, Respondent's testimony was false.

"In the same Statement Under Oath, Respondent also stated that instead of depositing the $20,000 settlement check into his M & T account, he actually cashed it and placed the money in a safe in his apartment. Based on the facts as noted above, this statement, too, was false.

"B. *Conclusions of Law*

"Petitioner alleges that Respondent violated Rule 1.1 by settling Mr. O'Brien's personal injury case without his authority. Rule 1.1 provides that '[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skills, thoroughness and preparation reasonably necessary for the representation.' This Court finds, by clear and convincing evidence, that by settling a client's case without client authorization, Respondent did act in contravention with several principles of Maryland Rules of Professional Conduct. However, in presenting its case, Petitioner proffered no evidence to indicate that Respondent also lacked the reasonably necessary knowledge, skills, thoroughness, and/or preparation called for under Rule 1.1. Although this Court does not condone the actions of an attorney which are clearly in violation of several Maryland Rules of Professional Conduct as outlined below, this Court con-

cludes that Petitioner presented no evidence and therefore failed to meet its burden of proof regarding a Rule 1.1 violation.

"Petitioner next alleges that Respondent violated Rule 1.2 by accepting a $20,000 check from GEICO in settlement of Mr. O'Brien's personal injury case without any notice to Mr. O'Brien.

\* \* \* \* \* \*

"The clear and convincing evidence before this Court is that Respondent accepted GEICO's settlement offer on August 19, 2003, and waited to inform Mr. O'Brien of this decision until several months thereafter. During the hearing before this Court, Mr. O'Brien testified that he was not aware of the settlement until September 2003, when he learned of the disposition of the case from a GEICO adjuster, Ms. Melanie King. There is no evidence before this Court that Respondent had consulted with Mr. O'Brien regarding the settlement prior to accepting the check from GEICO, prior to endorsing it, and prior to depositing it into his own account. For these reasons, this Court finds, by clear and convincing evidence, that Respondent did not consult with the client regarding the settlement of a case, did not abide by the client's decision whether to accept an offer of settlement, and as such, violated Rule 1.2(a).

"In further allegations of misconduct, Petitioner proffers that Respondent violated Rules 1.3, 1.4(a) and 1.15(b) by failing to advise his client that he had received a check in settlement of the client's matter. Rule 1.3 requires that a 'lawyer shall act with reasonable diligence and promptness in representing a client.' Rule 1.4(a) states that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' During the fact-finding hearing, Mr. O'Brien testified that he attempted to contact Respondent for at least two (2) months, telephoning him once a week, to no avail. However, in studying the telephone records entered into evidence as

Petitioner's Exhibit 3, Exhibit 6, this Court noted that at least ten (10) calls were placed from the Law Offices of Kapoor & Robaton between August 18, 2003 and August 28, 2003, to Mr. O'Brien, some lasting in excess of five (5) minutes. This Court finds that regarding the Rules 1.3 and 1.4(a) violations, Petitioner's evidence does not meet its burden of proof by clear and convincing evidence. As such, no violations exist.

&ast; &ast; &ast; &ast; &ast; &ast;

"Petitioner presented clear and convincing evidence indicating that upon receipt of the settlement check, Respondent did not promptly notify Mr. O'Brien of the recovered amount and did not promptly deliver to Mr. O'Brien any portion of the balance to which Mr. O'Brien was entitled. In addition, Mr. O'Brien testified that he did not have access to the settlement funds until 2004, over six (6) months after the funds were recovered. In fact, Mr. O'Brien claims, he did not even know that his case was settled for $20,000 until speaking with Ms. King, several months subsequent to the alleged settlement. For these reasons, this Court thus finds that Respondent violated Rule 1.15(b).

"Petitioner further maintains that Respondent violated Rule 1.5(c) by failing to reduce the contingency fee agreement to writing.

&ast; &ast; &ast; &ast; &ast; &ast;

"Respondent agreed to represent Mr. O'Brien's interests in a personal injury matter in return for a contingent fee equivalent to one third of Mr. O'Brien's recovery. The specifics of the fee agreement between Respondent and Mr. O'Brien were never reduced to writing. Respondent then negotiated a settlement on Mr. O'Brien's behalf, and deposited the recovered amount into his own bank account. During the investigation proceedings conducted by the Petitioner, Respondent testified that if there was no copy of the fee agreement in his documents pertaining to O'Brien, then no such transcribed agree-

ment actually existed. In addition, Mr. O'Brien testified before this Court that when he sought Respondent's services and agreed to pay him one third of any amount recovered, their agreement was not written down and was not otherwise recorded. Based on these facts, this Court finds by clear and convincing evidence that Respondent violated Rule 1.5(c).

\* \* \* \* \* \*

"At the hearing, Mr. David Robaton testified that during the time relevant to this matter, the law firm of Robaton & Kapoor maintained a separate trust account to be used for safekeeping client's property and/or funds. However, when Respondent received Mr. O'Brien's settlement check from GEICO, he failed to deposit it into the designated trust account, and instead, deposited the entire balance into his own personal account, titled in his name and the name of his mother. Subsequent to the deposit, Respondent withdrew monies from the account and reduced the balance below the amount to which Mr. O'Brien was entitled pursuant to the oral fee agreement between the parties. Respondent failed to deposit the remaining balance of Mr. O'Brien's settlement check into the proper trust account until April 8, 2004. Based on the clear and convincing evidence, this Court concludes that Respondent's failure to deposit client's funds into a trust account was in violation of Rule 1.15(a), Maryland Rule 16–604 and Md. Bus. Occ. & Prof.Code Ann. § 10–304.

"Respondent is also charged with violating Rule 8.4(b), (c) and (d) by depositing client funds into his personal account, by appropriating those funds for his own use, by forging his client's signature on the settlement check, and by committing perjury in his Statement Under Oath given to Petitioner by providing false testimony.

\* \* \* \* \* \*

"This Court acknowledges that it is not necessary for the Respondent to be charged or convicted of the criminal offense in order to find a violation of Rule 8.4(b). *See*

*Attorney Grievance Commission v. Garland,* 345 Md. 383, 394–5, 692 A.2d 465 (1997) (holding that there is no requirement that the Respondent be charged with or prosecuted for the criminal offense to find a violation of Rule 8.4(b) of the Maryland Rules of Professional Conduct; all that is required is proof of the underlying conduct by clear and convincing evidence).

"In support of its allegations of a Rule 8.4(b) violation, Petitioner presented, by clear and convincing evidence, that Respondent deposited his client's funds into his personal account a the M & T bank, and that he subsequently reduced the account balance below the amount which should have been reserved as the funds of the client. In support of its allegations of forgery, Petitioner proffered to this Court the testimony of Mr. O'Brien, who confirmed that he never signed the $20,000 GEICO settlement check and that Respondent assured him 'I signed it for you.' Finally, Petitioner contends that in Respondent's Statement Under Oath provided during the investigation of Respondent, Respondent made several statements which were false, inaccurate, and which constituted perjury. The inaccurate statements related to (1) whether the $20,000 check provided by GEICO was tendered as actual settlement or in mere hopes of settlement; and (2) whether Respondent cashed the settlement check and placed the money in a safe in his apartment. Based on the clear and convincing evidence submitted to the Court in Petitioner's exhibits 1 through 4, and the testimony of Mr. O'Brien and Mr. Robaton during the hearing before this Court, this Court finds that Respondent's aforementioned conduct (appropriation of funds, forgery of signature on check, and false testimony) reflects adversely on his fitness to practice law, his honesty, and his trustworthiness, and is, thus, in violation of Rule 8.4(b).

"In addition to alleging a Rule 8.4(b) violation for the aforementioned conduct, Petitioner alleges that a Rule 8.4(c) violation similarly exists. This Court finds that the forged signature on the check and the dishonest state-

ments proffered by the Respondent during the investigation constitute conduct which involves dishonesty, fraud, deceit or misrepresentation.

"Likewise, Petitioner alleges that the aforementioned conduct constitutes conduct which is prejudicial to the administration of justice and is in violation of Rule 8.4(d). Clearly, public confidence in the legal profession is a critical facet to the proper administration of justice. Conduct that erodes public confidence is viewed properly as prejudicial to the administration of justice. It is well settled that 'an attorney occupies a high position of trust with his client, and than an attorney must exercise the utmost good faith, fairness and fidelity toward the client.' *See Littell v. Morton,* 369 F.Supp. 411, 425 (D.Md.1974), *aff'd;* 519 F.2d 1399 (4th Cir.1975); *see also Homa v. Friendly Mobile Manor,* 93 Md.App. 337, 346–7, 612 A.2d 322 (1992) (stating that the fiduciary relationship which exists between an attorney and client carries with it the duty of loyalty and utmost good faith). For the reasons stated herein, this Court finds that the Petitioner demonstrated, by clear and convincing evidence, that Respondent engaged in conduct which is prejudicial to administration of justice and is in violation of Rule 8.4(d).

"Lastly, Petitioner maintains that Respondent's false statements noted above also warrant that a violation of Rule 8.1 be charged.

\* \* \* \* \* \*

"This Court finds that Petitioner has established, by clear and convincing evidence, that Respondent's false statements constitute a knowing failure to respond to demand for information from a disciplinary authority. Petitioner's request for Respondent to provide a Statement Under Oath were related to an investigation within the authority of the Attorney Grievance Commission and Bar Counsel. Although Respondent had, in fact, complied with Petitioner's request to participate in the investigative proceeding, the responses he provided to Petitioner's inquiries were dishonest, untruthful, and inaccurate.

Although this Court is aware that Rule 8.1(b) does not specify whether the response to a lawful demand for information must be truthful, surely the spirit of this Rule is such that it calls for honesty in communication with a disciplinary authority. This Court finds that Respondent violated Rule 8.1(b) when he falsely testified that GEICO sent him a check before he had agreed to settle his client's case and when he falsely testified that he had maintained funds belonging to Mr. O'Brien in a safe in his apartment.

"II. *Complaint of Bar Counsel*

"A. *Findings of Fact*

"Respondent was decertified from the practice of law on April 8, 2003 and was reinstated to the practice on June 10, 2004. On October 28, 2003, during the time when he was decertified, Respondent undertook to represent Ms. Yvonne Shirk in a bankruptcy matter.

"On May 7, 2004, in his Statement Under Oath, Respondent testified that he had attempted to become recertified and had sent a letter to the Client Protection Fund asking for a statement itemizing any monies he owed and submitting a change of address notice. At the time of Petitioner's investigation, no letter was sent actually to the Client Protection Fund.

"B. *Conclusions of Law*

"Petitioner alleges that Respondent violated Rule 5.5(a) by practicing law in Maryland during the time when he was not authorized to do so. Rule 5.5 states that '[a] lawyer shall not (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.' The clear and convincing evidence before this Court is that Respondent agreed to represent Ms. Yvonne Shirk on October 28, 2003, after he was decertified from the practice of law on April 8, 2003, and before being reinstated to the practice on June 10, 2004. Accordingly, this Court finds that Respondent has committed a violation of Rule 5.5(a).

"The Respondent is also charged with testifying falsely under oath by stating that he sent to the Client Protection Fund a letter, requesting from them and providing to them certain information, in violation of Rules 8.1(a) and 8.4(b), (c) and (d).

\*      \*      \*      \*      \*      \*

"The evidence before this Court is that at the time when Respondent testified to the Petitioner that he mailed a letter to the Client Protection Fund, alleging that he requested an itemization of monies owed and provided a change of address notice, no such letter was actually mailed. Although Petitioner has shown, by clear and convincing evidence, that Respondent's statement regarding mailing of the letter was false, there is no evidence as to whether the statement was made in relation to a material fact. Given the limited evidence produced with respect to these charges, this Court finds that the alleged Rule 8.1 violation cannot be sustained by a standard of clear and convincing evidence.

"In relation to Petitioner's allegations of Rule 8.4(b), (c) and (d) violations, this Court finds that, as stated previously, a false statement asserted during an investigative proceeding is in violation of this Rule.

"III. *Complaint of Yvonne D. Shirk*

"*A. Findings of Fact*

"On October 28, 2003, Ms. Shirk retained Respondent to represent her in a bankruptcy proceeding. At that time, she presented Respondent with a $50 check to be applied to the $350 fee which Respondent requested as payment for his legal services. Subsequent to depositing the said check into his personal account, Respondent spent the money. After Ms. Shirk complained to Bar Counsel about Respondent's conduct, Respondent represented to Bar Counsel that Ms. Shirk never tendered a $50 check. Respondent made similar inaccurate representations (stating that he received no money from Ms.

Shirk) to the Bankruptcy Court through his partner, David Robaton.

"B. *Conclusions of Law*

"Petitioner charges Respondent with violations of Rule 1.15(a) and Md. Bus. Occ.Code Ann. § 10–304, contending that Respondent failed to place an unearned fee in a trust account. The clear and convincing evidence before this Court is that upon receipt of a $50 check from Ms. Shirk as partial payment of the fee, Respondent deposited such check into a personal, rather than a trust, account. For these reasons, this Court finds that Respondent violated Rule 1.15(a) and Md. Bus. Occ.Code Ann. § 10–304.

"In addition, Petitioner also charges Respondent with violations of Rules 8.1(a) and 8.4(c), alleging that Respondent was dishonest when he told the Petitioner that Ms. Shirk never tendered the $50 check. This Court finds that in relation to Rule 8.1(a), Respondent's such statement to Petitioner does, in fact, constitute a knowingly false statement of material fact (and a violation of Rule 8.1(a)), due to the fact that Respondent communicated the statement during a disciplinary investigation and was aware of its falsity. The occurrence of Ms. Shirk's tender (or alleged lack thereof) of the $50 check was clearly significant and material to the investigation of Respondent's conduct. This Court also finds that in making the statement, Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, thereby violating Rule 8.4(c).

"Finally, it is Petitioner's contention that Respondent knowingly advised the bankruptcy court that he had not accepted any compensation for representing complainant, in violation of 8.4(a) and 3.3(a). Rule 8.4 states that '[i]t is professional misconduct for a lawyer to (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another.' Petitioner submits to this Court that Respondent made false representations to the bankruptcy court through his partner, David Robaton, whereby he

caused Mr. Robaton to file pleadings with the court, asserting incorrect information and violating the rules of professional conduct. At the hearing before this Court, Mr. Robaton testified to the same. For these reasons, this Court finds that Respondent violated Rule 8.4(a) by violating the rules of professional conduct through the acts of another.

\*　　\*　　\*　　\*　　\*　　\*

"This Court concludes, by clear and convincing evidence, that Respondent, in causing his partner to communicate inaccurate information to the bankruptcy court, made a false statement of material fact to a tribunal and offered evidence that he knew to be untrue. As such, Respondent is in violation of Rule 3.3(a).

"For the reasons stated above, this Court finds, by clear and convincing evidence, that Respondent violated Maryland Rules of Professional Conduct 1.2(a), 1.15(a) and (b), 1.5(c), 3.3(a), 8.1(b), 8.4(a), (b), (c), (d); Maryland Rule 16–604; and Md. Bus. Occ. & Prof.Code Ann. § 10–304.

"With respect to the complaint of Ms. Bolanle Sanya, the hearing judge issued the following findings of fact and conclusions of law:

"On August 2, 2003, complainant, Ms. Bolanle Sanya, was in an automobile accident in which she suffered various injuries. At the beginning of March 2004, Ms. Sanya retained Respondent Kapoor to represent her in her efforts to obtain damages from the other driver involved in the accident. The parties entered into a fee agreement. At that time, Ms. Sanya's expectations were that Respondent would be paid on a contingency basis and would be receiving ten (10) percent of the recovery. At the hearing before this Court, Ms. Sanya testified that although she expected to pay the Respondent in the form of a contingency fee, she was, in fact, unclear as to how this percentage would be calculated and against what

portion of the recovery it would be assessed. The contingency fee agreement was not reduced to writing.

"On April 27, 2004, Ms. Sanya's insurance company, Maryland Automobile Insurance Fund, issued a personal injury protection (PIP) check, payable to Ms. Sanya, in the amount of $2,500. Upon its receipt, Ms. Sanya endorsed the check to the Respondent, and the parties agreed that Respondent would apply the check toward the payment of Ms. Sanya's outstanding medical bills. At the hearing before this Court, Ms. Sanya testified that based on the same conversation with the Respondent she not only expected the Respondent to pay the medical providers with the received check, but she also understood that prior to any payment being made, Respondent would negotiate with the medical providers in attempts to lower the total amount owed by Ms. Sanya (as the $2,500 PIP check was inadequate to cover the entire sum owed by Ms. Sanya to the medical providers).

"Subsequent thereto, Respondent did not pay Ms. Sanya's medical providers, did not deposit the PIP check into a trust account, and proceeded to cash the check and spend the funds for his own, personal purposes. Since then, Respondent has not accounted to Ms. Sanya for the proceeds.

"On November 5, 2004, Mr. Thompson, Assistant Bar Counsel, wrote Respondent a letter, requesting an explanation of his disposition of Ms. Sanya's PIP funds. Respondent did not reply to the letter. On November 7, 2004, Bar Counsel sent Respondent a second letter. The letter was delivered to the Respondent by certified mail. Respondent did not claim this letter and, similarly, did not reply to it.

"Between January 18, 2005 and January 27, 2005, Bar Counsel's Investigator placed four (4) telephone calls to Respondent's cellular phone and left voicemail messages thereon. Respondent did not answer the telephone and did not return messages.

"Between January 20, 2005 and February, 2005, Bar Counsel's Investigator visited Respondent's residence on five (5) separate occasions. On each occasion, Investigator received no answer at the door.

## "CONCLUSIONS OF LAW

"Respondent agreed to represent Ms. Sanya's interests in a personal injury matter in return for a contingent fee equivalent to ten (10) percent of Ms. Sanya's recovery. The specifics of the fee agreement between Respondent and Ms. Sanya were never reduced to writing. In fact, although Ms. Sanya's expectations were that Respondent would receive ten (10) percent of the funds he intended to recover on her behalf, she was unclear as to what those 'recovered funds' would consist of.

"Subsequent to the initial agreement regarding the fee, Ms. Sanya received a PIP check from her insurance company. She endorsed the check to the Respondent, expecting him to pay her outstanding medical bills, less Respondent's ten percent fee. In recounting the arrangement between herself and the Respondent during the hearing before this Court, Ms. Sanya testified that no written agreement outlining the contingency fee specifications was ever signed. During the same hearing, Mr. David Robaton further testified that pursuant to an examination of Respondent's files of Ms. Sanya's matter, no written fee agreement was discovered. Based on these facts, this Court finds by clear and convincing evidence that Respondent violated Rule 1.5(c).

"In further allegations of misconduct, Petitioner alleges that by failing to pay Ms. Sanya's medical providers, by failing to deposit Ms. Sanya's funds into a trust account, and by appropriating Ms. Sanya's funds to his own personal use, Respondent violated Rules 1.3, 1.15(a), 8.4(b), (c), and (d); Maryland Rule 16–604; and Md. Bus. Occ. & Prof.Code Ann. § 10–304 and § 10–306. Rule 1.3 re-

quires that a 'lawyer shall act with reasonable diligence and promptness in representing a client.'

\* \* \* \* \* \*

"At the hearing before this Court, Mr. David Robaton testified that during the time relevant to this matter, the law firm of Robaton & Kapoor maintained a separate trust account to be used for safekeeping client's property and/or funds. However, when Ms. Sanya endorsed her PIP check to the Respondent, expecting him to hold off paying her medical providers until Respondent further negotiated with the providers, Respondent failed to deposit this check into the Robaton & Kapoor trust account. In fact, Respondent cashed the check, appropriated the funds to his own use, and never communicated with or paid the bills owed to Ms. Sanya's medical providers.

"In regards to the alleged Rule 8.4(d) violation, this Court acknowledges that public confidence in the legal profession is a critical facet to the proper administration of justice. Conduct that erodes public confidence is viewed properly as prejudicial to the administration of justice. It is well settled that 'an attorney occupies a high position of trust with his client, and than an attorney must exercise the utmost good faith, fairness and fidelity toward the client.' *See Littell v. Morton,* 369 F.Supp. 411, 425 (D.Md.1974), *aff'd,* 519 F.2d 1399 (4th Cir.1975); *see also Homa v. Friendly Mobile Manor,* 93 Md.App. 337, 346–7, 612 A.2d 322 (1992) (stating that the fiduciary relationship which exists between an attorney and client carries with it the duty of loyalty and utmost good faith).

"For the reasons stated above, this Court finds that, by clear and convincing evidence, Petitioner proved the following violations by the Respondent: (1) that Respondent did not act with reasonable diligence and promptness, in violation of Rule 1.3; (2) that Respondent did not keep client property in a separate account, properly identified and appropriately safeguarded, in violation of Rule 1.15(a); (3) that Respondent engaged in conduct involving deceit and misrepresentation, in a manner prejudicial to

the administration of justice, in violation of Rule 8.4(c) and (d); (4) that Respondent failed to expeditiously deposit in a trust account funds received from a client to be delivered to third persons, in violation of Maryland Rule 16–604 and Md. Bus. Occ. & Prof.Code Ann. § 10–304; and (5) that Respondent used funds intended to be deposited into a trust for a purpose different from that for which the funds were entrusted to the Respondent, in violation of Md. Bus. Occ. & Prof.Code Ann. § 10–306. Finally, Petitioner alleges that Respondent violated Rule 1.4(a) by failing to communicate to Ms. Sanya that, contrary to her expectations, Respondent did not negotiate with Ms. Sanya's medical providers and has not paid the bills outstanding and owed to them. Rule 1.4(a) states that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' During the fact-finding hearing, Ms. Sanya testified that per her conversation with the Respondent, she anticipated that Respondent would contact her medical providers, would negotiate a reduction in the balance Ms. Sanya owed to them, and would subsequently pay the providers out of the check Ms. Sanya received from her insurance company and endorsed to the Respondent. Based on this evidence, this Court finds that Petitioner established, by clear and convincing evidence, that Respondent failed to keep his client reasonably informed about the status of a matter and violated Rule 1.4(a).

"For the reasons stated above, this Court finds, by clear and convincing evidence, that Respondent violated Maryland Rules of Professional Conduct 1.5(c), 1.3, 1.15(a), 8.4(c) and (d); Maryland Rule 16–604; and Md. Bus. Occ. & Prof.Code Ann. § 10–304 and § 10–306."

(Alterations in original) (citations omitted) (footnotes omitted).

## STANDARD OF REVIEW

Recently in *Attorney Grievance Commission v. Cherry–Mahoi*, 388 Md. 124, 152–53, 879 A.2d 58, 76 (2005), we said:

In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, "our consideration is essentially *de novo.*"

(Citations omitted.)

## DISCUSSION

Neither Petitioner nor Respondent filed exceptions to the findings of fact and conclusions of law. Moreover, Respondent neither attended hearings before Judge Miller concerning this matter nor the proceedings in this Court. On June 6, 2005, the Circuit Court granted Petitioner's motion for a default order. As a result, the hearing in the hearing judge, on August 29, 2005, proceeded by default because of Respondent's failure to respond to the pleadings. At that hearing, the allegations of the Petition for Disciplinary or Remedial Action were deemed admitted. *See Attorney Grievance Commission v. Lee,* 390 Md. 517, 890 A.2d 273 (2006) (see slip. op. at 9). Because Respondent did not respond to Petitioner's Request for Admission of Facts and Genuineness of Documents, each matter of which an admission was requested was deemed admitted and conclusively established as a matter of law. *See* Md. Rule 2–424. Similarly, Respondent did not appear at the hearing on October 5, 2005, to respond to the charges against him. The hearing judge received into evidence Petitioner's exhibits and considered the testimony of Ms. Bolanle Sanya and David Robaton, Esquire. There was no opposition to any of the evidence received during any of the hearing judge's proceedings.

## SANCTIONS

We agree with the hearing judge's findings of fact and conclusions of law. Respondent violated MRPC 1.2(a),

1.3, 1.5(c), 1.15(a) and (b), 3.3(a), 5.5, 8.1(a) and (b), 8.4(a), (b), (c) and (d), Maryland Rule 16–604, and §§ 10–304 and 10–306 of the Business Occupations and Professions Article. Petitioner recommends that we impose the sanction of disbarment. Respondent has failed to make any recommendation. Further, we agree that disbarment is the appropriate sanction in this case.

In *Cherry–Mahoi* we held that "the appropriate sanction for a violation of the Rules of Professional Conduct depends on the facts and circumstances of each case, including consideration of any mitigating factors." 388 Md. at 160, 879 A.2d at 80 (quoting *Attorney Grievance Commission v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005) (citations omitted). Our goal in attorney disciplinary matters, primarily, is "to protect the public, to deter other lawyers from engaging in violations of the [MRPC], and to maintain the integrity of the legal profession." *Attorney Grievance Commission v. Awuah*, 374 Md. 505, 526, 823 A.2d 651, 663 (2003) quoted *Attorney Grievance Commission v. Blum*, 373 Md. 275, 303, 818 A.2d 219, 236) (citations omitted). Considering the nature and gravity of the violations and the apparent intent with which they were committed, the Petitioner's recommendation of disbarment is appropriate.

The hearing judge found in two of the cases under consideration that Respondent intentionally misappropriated client funds, forged a client's signature on a settlement check, and lied under oath. We have said on a number of occasions that the misappropriation of client funds " 'is an act infected with deceit and dishonesty, and ... will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.' " *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 410, 773 A.2d 463, 483 (2001) (quoting *Attorney Grievance Commission v. Williams*, 335 Md. 458, 474, 644 A.2d 490, 497). Respondent's intentional misappropriation of client funds was dishonest, deceitful, and criminal in violation of Rule 8.4(a), (b), (c), and (d).

██ Because his conduct was dishonest, deceitful, and criminal, it was prejudicial to the administration of justice and, also, in violation of Rule 8.4(d). The " 'public confidence in the legal profession is a critical facet to the proper administration of justice' and conduct that negatively impacts on the public's image or the perception of the courts or the legal profession violates Rule 8.4(d)." *Cherry–Mahoi,* 388 Md. at 159–60, 879 A.2d at 80 (quoting *Attorney Grievance Commission v. Sheinbein,* 372 Md. 224, 252–53 n. 16, 812 A.2d 981, 996 n. 16 (2002)) (citations omitted). Respondent forged his client's signature on a check and was dishonest in communicating with Bar Counsel during the course of this disciplinary investigation, all in violation of Rule 8.1 and 8.4(a). Further, in violation of Rule 8.1, he provided false testimony in stating that the insurance company "sent him a check before he had agreed to settle his client's case, and he falsely testified that he had maintained funds belonging to Mr. O'Brien in a safe in his apartment." Moreover, in violation of Rule 8.1, Respondent falsely represented to Bar Counsel and the bankruptcy court that his client, Ms. Shirk, never gave him a check for $50 or any compensation for representing her.

Given the nature and severity of Respondent's misconduct, the only appropriate sanction is disbarment.