*Attorney Grievance Commission v. Talieb Nilaja Wills*, Misc. Docket AG No. 99, September Term, 2013

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Talieb Nilaja Wills, violated Maryland Lawyers' Rules of Professional Conduct 4.1(a); 8.1; and 8.4(a), (b), (c), and (d). The violations stemmed from Respondent's misappropriation of his client's funds, and deceit about those funds and the work he did for that client. The appropriate sanction for Respondent's violations is disbarment.

Circuit Court for Montgomery County
Case No. 29702M
Argued: October 3, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 99

September Term, 2013

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

TALIEB NILAJA WILLS

_____

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: December 18, 2014

On February 19, 2014, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action (the "Petition") against Respondent, attorney Talieb Nilaja Wills. The Petition alleged violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in connection with Respondent's misappropriation of funds belonging to his client, Mrs. Millicent Goode, and his deceitful responses to questions, from Bar Counsel and others, concerning both his use of those funds and his representation of Mrs. Goode. Specifically, the Petition alleged that Respondent violated MLRPC 1.5 (fees); MLRPC 1.15(a) (safekeeping property); MLRPC 4.1(a) (truthfulness in statements to others); MLRPC 8.1 (a) and (b) (Bar Admission and Disciplinary Matters); and MLRPC 8.4(a), (b), (c), and (d) (misconduct).

On February 20, 2014, this Court designated the Honorable David A. Boynton of the Circuit Court for Montgomery County ("hearing judge") to conduct an evidentiary hearing and issue written findings of fact and conclusions of law. On March 20, 2014, Respondent was served with process, in compliance with Maryland Rule 16-753. Respondent did not file a response to the Petition, timely or otherwise. On April 23, 2014, the hearing judge entered a default order against Respondent.

Respondent did not move to vacate the order, although he appeared, unrepresented, at the subsequent hearing on the Petition, which occurred on July 16, 2014. The hearing judge heard evidence from Petitioner and one complainant testifying for Petitioner—Steven Weinberg, the personal representative of Mrs. Goode's estate. Respondent cross-examined Mr. Weinberg but did not testify or present any witnesses. On August 6, 2014,

the hearing judge issued written findings of fact and conclusions of law, in which he concluded, by clear and convincing evidence, that Respondent had violated MLRPC 4.1(a); MLRPC 8.1(a) and (b); and MLRPC 8.4(a), (b), (c), and (d). Neither party filed exceptions to either the hearing judge's underlying factual findings or his legal conclusions. Respondent did not make a recommendation for sanction; Petitioner recommended disbarment.

On October 3, 2014, we heard oral argument, at which only Petitioner appeared. The same day, we entered a per curiam order disbarring Respondent. *Attorney Grievance Comm'n v. Wills*, 440 Md. 182 (2014). We explain in this opinion the reasons for that action.

I.

As summarized, the hearing judge found the following facts.

Respondent was admitted to the Maryland Bar on December 19, 2002. He maintained an office for the practice of law, Wills Law, PC, in Montgomery County, Maryland. Sometime in 2009, Mrs. Millicent Goode, who was in her 80s, entered into an attorney-client relationship with Respondent. No formal retainer agreement was ever executed. During his representation, Mrs. Goode was residing in a retirement home. Her health was poor, so she relied on Respondent to care for her finances.

On or about April 8, 2010, Respondent prepared, and Mrs. Goode executed, a "Durable Power of Attorney for Financial and Business Matters of Millicent R. Goode" ("Power of Attorney"). The Power of Attorney "appointed the Respondent as Mrs.

2

Goode's agent to make financial and health care decisions[]" and provided that all of Mrs. Goode's future tax returns were to be prepared, executed, and filed by Respondent.

The same day Mrs. Goode signed the Power of Attorney, Respondent added his name as a joint owner of Mrs. Goode's Bank of America bank account ("joint bank account" or "account"). At that time, the account had a balance of $14,157.06. According to bank records, for the most recent years immediately prior to 2009, Mrs. Goode received approximately $3,000 each month in retirement benefits and spent approximately that same amount each month on her personal finances. There was no history of her making cash withdrawals or using a check card.

Once Respondent had his name added to the joint bank account, he began withdrawing cash and making debit card purchases for his personal use. By the end of June 2010 (less than three months after Respondent added his name to the account), the account balance was $2.92.

On June 30, 2010, Mrs. Goode sold her home, located in Washington, D.C., for $245,971.71.[1] That sum was deposited into the joint bank account. Respondent began accessing those funds for his own use. He wrote himself multiple checks from the account and withdrew tens of thousands of dollars in cash. Respondent used account funds to pay his personal utility and cellular phone bills, to buy clothes, meals at restaurants, and

---

[1] Respondent indicated in subsequent correspondence to an attorney who was retained by Mrs. Goode's son after her death, that he, Respondent, was involved in the sale of the home.

alcohol, as well as to purchase plane tickets to Miami, Las Vegas, and Hawaii, and pay for hotels while on those trips.

In or about March 2011, Mrs. Goode suffered a stroke and was admitted to Howard University Hospital. After the stroke and until her death on June 10, 2012, Mrs. Goode lived in various rehabilitation and assisted living facilities. During that time, she returned often to Howard University Hospital for ongoing care and treatment.

By the time of Mrs. Goode's death, there were no funds left in the joint bank account. Respondent nevertheless wrote several checks from the account to cover Mrs. Goode's funeral and burial expenses. Those checks were returned for insufficient funds.

Following Mrs. Goode's death, the civil service annuity payments she had been receiving monthly in the amount of $3,000 continued to be deposited into her account. Respondent did not return the money to the government and instead spent the money.

After the death of Mrs. Goode, her son, Clyde V. Goode, hired an attorney, Steven Weinberg, to assist him in closing the estate. Mr. Weinberg, who later was appointed the personal representative of the estate, sent repeated requests to Respondent asking for information relating to Respondent's work for Mrs. Goode. Mr. Weinberg specifically requested the original retainer agreement, documentation of Mrs. Goode's expenses, her original will, her tax returns for years 2009-2011, and all documents necessary for the probate of her estate.

On August 26, 2012, Respondent provided Mr. Weinberg with a "Memorandum," which Respondent intended to serve as his response to Mr. Weinberg's request. With the Memorandum, Respondent included an itemized account summary that explained some of

4

the work he had done on behalf of Mrs. Goode. The Memorandum purported to summarize Respondent's work on behalf of Mrs. Goode and included the monetary value of some of that work; the summary contained only some of the detailed financial information Mr. Weinberg had requested. The Memorandum set forth several specific representations relating to Respondent's time and work with Mrs. Goode. Respondent represented that Mrs. Goode's house was sold in 2010, because if she did not sell it, she was going to be fined $100 a day, by the Washington, D.C. government, retroactively to 2009. Respondent stated that he had been involved in the sale of the home with the District of Columbia and had prepared and filed tax returns on behalf of Mrs. Goode. He noted his attorney rate, which he said had been agreed upon with Mrs. Goode, was to be $300 per hour, and that he would be compensated for any administrative work at $85 an hour. He stated that he visited Mrs. Goode in her retirement home three times a week, regularly spoke to the doctors and nurses at Howard University Hospital about Mrs. Goode's medical care, and had talked to Mrs. Goode's health insurance provider, Care First, on her behalf. Respondent noted, too, that there were three outstanding bills including a disputed bill with a rehabilitation facility, a disputed bill with an assisted living facility, and a bill for a separate rehabilitation center. He added that Mrs. Goode also had an outstanding bill with Howard University Hospital for $78,000.

After reviewing the Memorandum and itemized account summary, Mr. Weinberg repeatedly requested additional documentation. Respondent did not reply to those requests. The hearing judge found that Respondent's itemized "accounting" of the work he had performed for Mrs. Goode was "fabricated by the Respondent in an effort to knowingly

5

and intentionally mislead Mr. Weinberg and Mr. Goode and to cover up his misappropriation."

*Attorney Grievance Commission Investigation*

On October 31, 2012, Mr. Goode filed a complaint with Petitioner. Bar Counsel, on behalf of Petitioner, forwarded the complaint to Respondent on November 16, 2012, and requested a written response within fifteen days. Bar Counsel did not receive a response from Respondent and therefore sent a second letter on December 13, 2012. When Bar Counsel did not receive a response to that letter, she sent a third letter on January 22, 2013. In the third letter, Bar Counsel also requested an explanation for Respondent's failure to respond to the first two letters. Respondent again failed to reply to Bar Counsel's letter.

Eventually an investigator working on behalf of Petitioner was able to reach Respondent by personally serving him with a subpoena at a courthouse where he was present for a hearing for another of his clients. After receiving the subpoena for himself and for the Bank of America records of accounts held by Respondent, Respondent agreed to provide a statement under oath.

Bar Counsel interviewed Respondent on April 30, 2013. Although Respondent gave a statement under oath, he failed to bring any of the subpoenaed documents with him. Respondent informed Bar Counsel that the subpoenaed documents were in a storage facility in Bethesda, Maryland. During the interview, Respondent refused to answer any substantive questions about the Goode matter or about Bar Counsel's investigation. He requested a continuance in order to obtain counsel, which he said he was in the process of

6

doing. Bar Counsel granted Respondent the continuance and issued a new subpoena for him to appear on May 30, 2013, for the rescheduled interview. It also was agreed that Respondent would meet Bar Counsel's investigator at the storage facility on May 21, 2013.

On May 17, 2013, Bar Counsel's investigator attempted to contact Respondent to confirm the plans to retrieve the subpoenaed documents from the Bethesda storage facility. Respondent never returned the investigator's phone call. The documents were never recovered. Respondent did not obtain counsel, even though he had requested the continuance on the premise that he was about to obtain counsel and did not want to proceed without counsel. Respondent did not appear for the re-scheduled interview, for which he had been subpoenaed.

Based upon these findings, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 4.1(a); MLRPC 8.1; and MLRPC 8.4(a), (b), (c), and (d).

## II.

In attorney discipline proceedings, this Court "has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). We accept the hearing judge's findings of fact as correct unless shown to be clearly erroneous. *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011). Neither Respondent nor Bar Counsel filed exceptions to the hearing judge's findings of fact. We therefore treat those findings as established. *See* Md. Rule 16-759(b)(2)(A).

We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1); *Page*, 430 Md. at 626. The ultimate decision as to whether an attorney has engaged in professional misconduct lies with this Court. *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014).

III.

Neither party filed exceptions to the hearing judge's conclusions of law. Based upon our independent review of the record, we agree with the hearing judge that Respondent violated MLRPC 4.1(a); MLRPC 8.1; and MLRPC 8.4(a), (b), (c), and (d).

*Truthfulness in Statements to Others*

MLRPC 4.1(a) provides, in relevant part, that "[i]n the course of representing a client a lawyer shall not knowingly [] make a false statement of material fact or law to a third person[.]" This Court has held that a misrepresentation to another attorney violates MLRPC 4.1(a). *See Attorney Grievance Comm'n v. Zhang*, 440 Md. 128, 166 (2014); *see also Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 367 (2006) (holding a violation of MLRPC 4.1(a) when the attorney falsely stated to opposing counsel that his client refused to be deposed).

The hearing judge found, and we have accepted as established, that in the Memorandum he sent to Mr. Weinberg Respondent "knowingly and intentionally made multiple misrepresentations about his representation of Mrs. Goode to Mr. Weinberg." The hearing judge further found that Respondent "fabricated an account of Mrs. Goode's funds and provided it to Mr. Weinberg[,]" omitting from that accounting the many thousands of

8

dollars he had drawn from Mrs. Goode's bank account, for his own use, during his three-year representation of her.  These facts readily support a violation of MLRPC 4.1(a).

*Compliance with Disciplinary Matters*

MLRPC 8.1 reads:

a lawyer . . . in connection with a disciplinary matter[] shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority. . . .

Section (a) of this rule is violated when an attorney intentionally misleads Bar Counsel about the attorney's knowledge and ability to provide information to assist in the investigation.  *See Attorney Grievance Comm'n v. Lee*, 393 Md. 385 (2006) (violation of MLRPC 8.1(a) when an attorney falsely informed Bar Counsel that he was unable to obtain transcripts, which, if believed, could have caused the complaint against the attorney to be dismissed); *Attorney Grievance Comm'n v. Kapoor*, 391 Md. 505 (2006) (violation of 8.1(a) when an attorney told Bar Counsel that his client had never tendered a check when the client in fact had done so).

Section (b) of MLRPC 8.1 is violated when an attorney fails to reply to Bar Counsel's lawful requests for information.  *Attorney Grievance Comm'n v. Gray*, 436 Md. 513 (2014); *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15 (2012); *Attorney Grievance Comm'n v. Nnaka*, 428 Md. 87 (2012); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147 (2010).  Belated participation in a Bar Counsel investigation does not overcome a violation of failing to respond to Bar Counsel in the first instance.  *See Attorney Grievance*

9

*Comm'n v. Queen*, 407 Md. 556 (2009) (respondent's eventual response to Bar Counsel after a four-month initial failure to respond was still a violation of MLRPC 8.1(b)).

The hearing judge found, and we have accepted, that Respondent knowingly misrepresented to Bar Counsel that Mrs. Goode's file was in a storage facility and that he would meet Bar Counsel's investigator at the facility to retrieve the file. He did not reply to or meet with the investigator after receiving a subpoena for the file and agreeing to the meeting. Respondent never did produce the file to bar Counsel. The hearing judge further found that Respondent thrice failed to reply to Bar Counsel's initial requests for information, establishing that Respondent also violated MLRPC 8.1(b). Those facts establish a violation of MLRPC 8.1(a).

*Misconduct*

MLRPC 8.4 provides:

It is professional misconduct for a lawyer to:
- (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
- (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
- (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
- (d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge found that Respondent had stolen and misappropriated funds from Mrs. Goode's bank account when he was her attorney, in violation of Md. Code Ann., Crim. Law § 7-104(a)(1), (a)(2), and (a)(3), and Crim. Law § 7-113(a)(1) and (a)(2). Those findings establish a violation of MLRPC 8.4(b). *See Attorney Grievance Comm'n v.*

10

*Nussbaum*, 401 Md. 612, 644 (2007) (holding that misappropriation of a client's escrow funds for attorney's own use violated MLRPC 8.4(b)); *Attorney Grievance Comm'n v. Carithers*, 421 Md. 28, 39–40 (2011) (clear and convincing evidence that attorney violated Md. Code Ann., Crim. Law § 7-104(a)(1), thereby establishing a violation of MLRPC 8.4(b)).

The hearing judge found that Respondent's misrepresentations to Mr. Weinberg and Bar Counsel and his misappropriation of Mrs. Goode's money was laden with deceit and dishonesty. That finding establishes that Respondent violated MLRPC 8.4(c). *See Zhang*, 440 Md. at 169 (violation of MLRPC 8.4(c) when the attorney made false representations to co-counsel); *Attorney Grievance Comm'n v. Landau*, 437 Md. 641, 652 (2014) (finding that an attorney who neither administered nor accounted for client funds, and instead withdrew them for personal use, violated MLRPC 8.4(c)); *see also Attorney Grievance Comm'n v. Brown*, 415 Md. 269, 279 (2010) (false statements to Bar Counsel violated MLRPC 8.4(c)).

That same misconduct by Respondent also establishes a violation of MLRPC 8.4(d). *See Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 132 (2012) (misappropriation of client funds is "dishonest conduct" that also is "prejudicial to the administration of justice in violation of [MLRPC] 8.4(c) and (d)"); *Brown*, 415 Md. at 279 (false statements to Bar Counsel violated MLRPC 8.4 (c) and (d)); *see also Attorney Grievance Comm'n v. Nussbaum*, 401 Md. at 642 (the deceit and dishonesty underlying the violation of MLRPC 8.4(c) also constituted an act prejudicial to the administration of justice in violation of MLRPC 8.4(d)).

11

Respondent's violation of the aforementioned provisions of the MLRPC constitute a violation of MLRPC 8.4(a).

IV.

We turn now to the appropriate sanction for Respondent's misconduct. Respondent did not submit a recommendation for sanction. Bar Counsel contended that the misappropriation of entrusted funds is inherently deceitful and dishonest, and therefore Respondent should be disbarred.

The severity of the sanction for an attorney's misconduct "depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33 (2006) (citations omitted). The purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather, "to protect the public and the public's confidence in the legal profession[,]" *Zimmerman*, 428 Md. at 144. "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

We are consistent in holding that the "misappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Zimmerman*, 428 Md. at 144 (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410 (2001)). That sanction is warranted because attorneys

> must remember that the entrustment to them of the money and property of others involves a responsibility of the highest order. They must carefully administer and account for those funds. Appropriating any part of those

12

funds to their own use and benefit without clear authority to do so cannot be tolerated.

*Landau*, 437 Md. at 652 (quoting *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 345 (1991)).

The "misappropriation of client funds alone will result in disbarment in the absence of compelling extenuating circumstances." *Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 566 (2005). Respondent's misconduct in misappropriating funds is exacerbated by multiple other violations, including the creation of the Memorandum with the intent to deceive Mr. Weinberg. Further, the itemized bill that Respondent created to justify the balance in Mrs. Goode's account following her death is a template of dishonesty.

In addition, Respondent was evasive and dishonest with Bar Counsel throughout the investigative process. These combined violations create an even stronger case for disbarment. *See Attorney Grievance Comm'n v. Page*, 430 Md. 602, 637 (2013) (holding disbarment appropriate after considering the aggravating factor that the respondent "committed multiple offenses[]"); *Attorney Grievance Comm'n v. Bernstein*, 363 Md. 208, 229 (2001) (holding disbarment appropriate where the respondent's misappropriation of funds was "compounded by other numerous rule violations").

In light of our precedent, Respondent's misconduct clearly would warrant disbarment, absent compelling mitigating circumstances. Respondent did not offer, nor did the hearing judge find, any mitigating circumstances, compelling or otherwise, that would justify a lesser sanction. Accordingly, we entered the October 3, 2014, order disbarring Respondent and awarding costs against him.

13