903 A.2d 360

**ATTORNEY GRIEVANCE COMMISSION**

v.

**Norman Joseph LEE, III.**

**Misc. AG No. 8, Sept. Term, 2004.**

Court of Appeals of Maryland.

July 27, 2006.

John C. Broderick, Esq., Assistant Bar Counsel Attorney Grievance Commission of Maryland, for petitioner.

Norman Joseph Lee, III of Bel Air, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

This is the second round with this Court for this particular case. Previously, in *Attorney Grievance Commission v. Lee* (*Lee I*), 387 Md. 89, 874 A.2d 897 (2005), we remanded this matter to the hearing judge potentially to receive new evidence and to revisit, in light of any new evidence, her credibility determinations and findings of fact and conclusions of law as to certain witnesses and Respondent, Norman Joseph Lee, III. *Lee I,* 387 Md. at 119–120, 874 A.2d at 915. The impetus for the remand was a factual dispute as to whether Respondent's client, Mr. John Henry Smith, or his wife (the "Complainant"), received certain written communications claimed to have been sent to them from Respondent's law office.

We shall not repeat at this point much of what was stated in our earlier opinion. The fuller background of the underlying

complaint against Respondent may be found there. A summary of the earlier evidentiary hearings and the hearing judge's findings of fact and conclusions of law will be reiterated later in this opinion.

In furtherance of the remand, a hearing was held by the hearing judge, the Honorable Vicki Ballou–Watts, on 1 September 2005. Respondent produced as a witness Ms. Kathryn Jacobs, Supervisor of the Mail Room at the Western Correctional Institution ("WCI"), where Respondent's former client, John Henry Smith, is incarcerated. Ms. Jacobs has been employed in the Mail Room at the facility since it opened in 1996. Her work responsibilities included "everything that goes on in the Mail Room ... [including] the processing of legal mail."[1] Logbooks are maintained with the date of receipt of each piece of legal mail, the recipient inmate's cell location (coded by his unique Division of Corrections' identifying number), the sending person's or entity's name, and a written signature of receipt by the inmate.

Testifying from the relevant pages in the log books (copies of which were received in evidence), Ms. Jacobs established that pieces of "legal mail" emanating from Respondent's law office were received at WCI and acknowledged as received by Smith on: 7 May 2001; 29 November 2001; 1 May 2002; 17 May 2002; 20 May 2002; 10 July 2002; and 19 July 2002.[2] No one in the administration or the guards at WCI knew the content of the "legal mail."[3]

---

1. "Legal mail" was defined by Ms. Jacobs as "anything from courts, attorneys [and] Parole Commissioner[s]" to inmates.

2. Bar Counsel objected to the testimony of Ms. Jacobs and the documentary exhibits based on the representation that, at the prior evidentiary hearing on 8 October 2004, Mr. Smith had denied receiving only a copy of a 29 April 2002 letter from Respondent to the State Parole Commission requesting a hearing in Mr. Smith's case. The hearing judge overruled Bar Counsel's objection.

3. Although a guard watches the recipient inmate open the envelope, the only concern of the guard is to foreclose the receipt of contraband. The guard is not supposed to read the communication.

Respondent then sought to elicit testimony before the hearing judge from the Assistant Bar Counsel prosecuting the disciplinary matter. It appeared that Mr. Lee wished to interrogate Assistant Bar Counsel with regard to representations Bar Counsel made at the October 2004 hearings relating to his efforts to ascertain from conversation with personnel at WCI the bonafides of whether Respondent had sent "legal mail" to Mr. Smith. The hearing judge granted Assistant Bar Counsel's motion to quash the witness subpoena.

On 17 October 2005, Judge Ballou–Watts filed additional written Findings of Fact and Conclusions of Law. In relevant part, she stated:

In its Petition, the Attorney Grievance Commission sought disciplinary action against Respondent for alleged misconduct, in violation of the Maryland Rules of Professional Conduct, as follows:

A. Violation of Rule 1.1, by failing to provide competent representation by accepting representation in a legal matter involving the investigation and pursuit of post conviction relief or other court proceedings at a time when the Respondent relied significantly upon his paralegal's expertise in post conviction matters;

B. Violation of Rule 1.3, by failing to act with reasonable diligence and promptness over nearly a two year period in the pursuit of the release from incarceration of John Henry Smith either through court proceedings or by means of parole;

C. Violation of Rule 1.4(a)(b), by failing to respond to his client's repeated requests for information in a timely fashion; failing to advise his client of the status of the legal matter for which he was retained; and failing to afford the client information necessary to make decisions about the legal matter and the representation;

D. Violation of Rule 1.5(a), by charging and retaining an unearned and therefore unreasonable fee in the amount of $3,500.00;

E. Violation of Rule 1.16(d), by failing to refund a significant portion, if not all, of the $3,500 fee received upon termination of representation in February 2003;

F. Violation of Rule 5.3(a)(b)(c) and Rule 5.5(a)(b), by employing a disbarred attorney, Lester V. Jones, and entrusting him to perform services without appropriate supervision which otherwise constituted the unauthorized practice of law;

G. Violation of Rule 8.1(a) and Rule 8.4(b)(c)(d), by falsely stating or misrepresenting to the Attorney Grievance Commission that the reason for delay in pursuing the matter for which he was retained was the unavailability of transcripts. **Petitioner abandoned the Rule 1.1, Rule 5.3, and Rule 5.5 violations.**

Findings of Fact and Conclusions of Law were filed on November 29, 2004. This court found by clear and convincing evidence that the Respondent committed violations of the Maryland Rules of Professional Conduct 1.3, 1.4(a), 8.1(a) and 8.4(c).

This matter was been remanded by the Court of Appeals as a result of Respondent's request for consideration of newly discovered evidence.

During the original evidentiary hearing, Western Correctional Institute (WCI) inmate John Henry Smith testified that he did not receive a copy of Respondent's April 29, 2002 letter to the Maryland Parole Commission. In the letter, Respondent requested a parole hearing. During the evidentiary hearing, Bar Counsel suggested that the inmate had never received any written communication from the Respondent.

After this court completed its Findings of Fact and Conclusions of Law, Respondent filed a post-hearing motion in connection with newly discovered mail records from WCI which, if admitted, would tend to show that the inmate did receive a copy of Respondent's April 29th letter, along with certain additional correspondence from Respondent's law office.

In its Opinion and Order dated May 12, 2005, the Court of Appeals remanded the case to this court to consider the newly discovered evidence, if admitted. []. Respondent argued that this evidence might be a basis for questioning John Smith's testimony at the evidentiary hearing and any weight afforded to this testimony by the [hearing] judge. []. Therefore, the issue on remand is whether "this evidence, and its implication on the overall credibility assessments of Lee and Bar Counsel's witnesses, are potentially material to each of the court's underlying Findings of Fact and resultant Conclusions." [ ].

## III. FINDINGS OF FACT

At the evidentiary hearing conducted on September 1, 2005, this court received testimony from Kathryn Jacobs. Ms. Jacobs is the mailroom supervisor at WCI. As the mailroom supervisor, she is responsible for processing all incoming and outgoing mail for inmates—including correspondence, which is characterized as "legal" mail.

Legal mail includes correspondence from the courts, attorneys, and the Maryland Parole Commission. According to Ms. Jacobs, who testified regarding mailroom procedures during the relevant time period (2002), whenever legal mail was delivered to WCI, it was separated from other correspondence. Legal mail was recorded in a logbook for the specific housing unit where the inmate resided. The legal mail was then bound to the logbook and placed in a mailbag. That bag was transported to the designated housing unit. Once delivered to the unit, the mail was given to the inmate by a correctional officer. The inmate was required to sign the logbook for each correspondence received. Mail was not opened until the inmate received it from the correctional officer. In addition, neither the correctional officer nor the mailroom staff read the inmate's mail.

Respondent's Exhibit 1 consists of photocopies of various legal mail logbook entries for mail received by inmate John Henry Smith in housing unit 3. Also included in the exhibit was a copy of the cover of the aforementioned logbook.

These logbook entries show that inmate Smith signed for correspondence from Respondent's law office on May 1, 2002, May 7, 2002, May 17, 2002, May 20, 2002, July 10, 2002, and July 19, 2002.

During the original evidentiary hearing, Mr. Smith denied receiving correspondence from Respondent, which was dated April 29, 2002. []. Although the specific contents of mail received by Smith on May 1, 2002 (or any other date) is unknown, a reasonable inference can be drawn that John Henry Smith received one or both letters addressed to Mr. Smith and the Maryland Parole Commission, respectively. Both were dated April 29, 2002.

As for the additional correspondence signed for by Mr. Smith in May and July 2002, a reasonable inference can be drawn that he was sent letters or copies of letters from the Respondent's law office as reflected in Respondent's Exhibits 8, 9, 11, and 12 from the original evidentiary hearing.

The Complainant Mary Ellen Smith testified that she did not receive copies of certain correspondence from Respondent's law office. However, the testimony of Ms. Kathryn Jacobs sheds no new light on Ms. Smith's credibility.

In fact, while this court accepts as true the testimony and exhibits offered during the September 1, 2005 evidentiary hearing, the original credibility assessments, findings and conclusions remain unchanged.

The assessments, findings and conclusions remain unchanged because they were primarily based upon the many inconsistencies between Respondent's testimony and the *content* of his exhibits, including but not limited to Respondent's client ledger, list of itemized calls, correspondence and internal office memorandum.

## *CONCLUSION*

This court has made additional findings of fact based upon the testimony and exhibits offered during the September 1, 2005 evidentiary hearing. However, this new evidence has no material effect upon the court's original Findings of Fact

and Conclusions of Law. As a result, the findings and conclusions that Respondent violated Maryland Rules of Professional Conduct 1.3, 1.4(a), 8.1 and 8.4(c) are hereby restated and reaffirmed.

Neither Bar Counsel nor Respondent filed further written exceptions[4] with this Court to Judge Ballou–Watts' supplemental Findings of Fact and Conclusions of Law filed on 17 October 2005, although Respondent had filed extensive written exceptions[5] to her earlier Findings of Fact and Conclusions of Law filed on 29 November 2004. Bar Counsel filed with the Court on 4 January 2006 a written Recommendation for Sanction suggesting that indefinite suspension of Respondent

---

4. Md. Rule 16–758 provides, in pertinent part:

 **Rule 16–758. Post–hearing proceedings.**

 (a) **Notice of the filing of the record.** Upon receiving the record, the Clerk of the Court of Appeals shall notify the parties that the record has been filed.

 (b) **Exceptions; recommendations.** Within 15 days after service of the notice required by section (a) of this rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

5. Regarding this Court's analysis when exceptions are filed and when they are not filed, Md. Rule 16–759(b) provides, in pertinent part:

 **Rule 16–759. Disposition.**

 * * *

 (b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review do novo the circuit court judge's conclusions of law. .

 (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

 (B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

 Md. Rule 16–757(b) provides that "[t]he petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

was appropriate in this case. *See* Md. Rule 16–758(b)(2). Respondent offered no written recommendation for disposition. Both sides appeared for oral argument before the Court on 3 February 2006, at which time Respondent argued for dismissal of the charges.

I.

As a threshold matter, we must determine the impact, if any, of Respondent's decision not to file additional exceptions to Judge Ballou–Watts' 17 October 2005 supplemental findings of fact on our analytical obligations under Md. Rule 16–759(b)(2). Based on the particular circumstances of this case, we conclude that Md. Rule 16–759(b)(2)(B) (when exceptions are filed) should guide our consideration of any factual disputes.

In her 17 October 2005 supplemental findings of fact and conclusions of law, Judge Ballou–Watts recanted only one set of factual findings from her 29 November 2004 findings and conclusions, that is, that John Henry Smith had not received from Respondent's law firm certain mail communications during May and July 2002 regarding Respondent's representation of Mr. Smith. In all other respects, the hearing judge reaffirmed the remaining "assessments, findings, and conclusions" of her earlier decision. Her apparent reasoning in reaching that result was that the remaining "assessments, findings, and conclusions" "were primarily based upon the many inconsistencies between Respondent's testimony and the *content* of his exhibits, including but not limited to Respondent's client ledger, list of itemized calls, correspondence and internal office memorandum." (Emphasis in original). Also, the hearing judge noted that the new evidence adduced by Respondent at the hearing held on remand did not refute in any direct way the Complainant's earlier testimony regarding not receiving letters or copies of other letters assertedly sent to her by Respondent's office regarding her husband's case.

As noted earlier, Respondent filed extensive written exceptions to the hearing judge's 29 November 2004 findings of fact

and conclusions of law. Because the hearing judge's 17 October 2005 supplemental findings of fact and conclusions of law, on virtually all material points, re-adopted her earlier decision, Respondent's earlier exceptions remain as relevant and responsive as their intrinsic merit will reveal by our analysis to follow. It would elevate insupportably form over substance, under these circumstances, to require a mere repetition of those earlier exceptions in response to the 17 October 2005 supplemental findings and conclusions, especially in view of the fact that Respondent prevailed on the limited factual scope of the remand. Accordingly, we shall consider those earlier exceptions by Respondent which remain relevant, according to the standard of Md. Rule 16–759(b)(2)(B), as applied to the hearing judge's combined findings and conclusions.

## II.

The hearing judge concluded that Respondent committed violations [6] of Maryland Rules of Professional Conduct ("MRPC") 1.3 [7] (diligence), MRPC 1.4(a) [8] (communication), MRPC 8.1(a) [9] (Bar admission and disciplinary matters), and MRPC 8.4(c) [10] (misconduct) as alleged in the Petition for

---

**6.** Prior to the hearing judge taking the case under advisement, Bar Counsel withdrew charges that Lee violated MRPC 1.1, 5.3, and 5.5.

**7.** MRPC 1.3 states:
Rule 1.3. Diligence.
A lawyer shall act with reasonable diligence and promptness in representing a client.

**8.** MRPC 1.4(a) states:
Rule 1.4. Communication.
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**9.** MRPC 8.1(a) states:
Rule 8.1. Bar admission and disciplinary matters.
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact[.]

**10.** MRPC 8.4(c) states:

Disciplinary Action. In *Lee I,* we outlined the findings of fact and conclusions of law by the hearing judge:

The Petition for Disciplinary Action alleged violations of MRPC 1.3 [] (diligence), MRPC 1.4 [] (communication), MRPC 1.5(a) [] (fees), MRPC 1.16(d) [] (declining or terminating representation), MRPC 8.1(a) [] (bar admission and disciplinary matters), and MRPC 8.4(b), (c), (d) [] (misconduct). In his answer to the petition, Lee denied any misconduct.

A two day evidentiary hearing was held before Judge Vicki Ballou–Watts of the Circuit Court for Baltimore County on 8 and 13 October 2004. After hearing testimony from Lee, Mary Smith, John Smith, an official from WCI, and Lee's secretary, the hearing judge issued her Findings of Fact and Conclusions of Law on 29 November 2004. She found, by clear and convincing evidence, that Lee violated MRPC 1.3, 1.4(a), 8.1(a), and 8.4(c). Lee violated MRPC 1.3, she concluded, by failing to review personally Smith's case materials for nearly two years; failing to forward to his clients the results of any research or draft documents, as promised in various correspondence; failing to manage properly his workload; and, failing to meet with or speak to John and Mary Smith for nearly a two year period. The hearing judge concluded that Lee violated MRPC 1.4(a) by failing to respond to the Smiths' requests for information, both written and made by telephone; failing to forward the results of any research or draft documents, as promised in various correspondence; and, failing to respond to Mary Smith's repeated requests for the return of transcripts and papers for a period of three weeks. The judge also concluded that Lee "violated [MRPC] 8.1(a) and 8.4(c) when he misrepresented to the Attorney Grievance Commission that the cause for delay in pursuing the legal matter for which

---

**Rule 8.4. Misconduct.**
It is professional misconduct for a lawyer to:
\* \* \*
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

he was retained was due to the unavailability of transcripts." Judge Ballou–Watts, however, found no clear and convincing evidence to support a conclusion that Lee violated MRPC 1.5(a) and 1.16(d). Rather, she was persuaded by Lee's client ledger to conclude that there was not sufficient evidence from which to find that no appreciable work had been performed. She stated that, although it was possible that Mary Smith may have been entitled to a refund of a portion of her retainer, there was insufficient evidence to accurately determine what portion of the fee was unearned.

Lee filed several exceptions to the hearing judge's written Findings of Fact and Conclusions of Law, disputing several, if not most, of the factual findings. Lee also filed a Motion for Reconsideration Based on Fraud, Deceit and Misrepresentation, supported by alleged new evidence that was not introduced or considered at the evidentiary hearing, which he boldly alleged demonstrated that Bar Counsel deliberately had presented false testimony. Lee also argued that the hearing judge precluded him from impeaching Bar Counsel's witness, Mary Smith, by improperly preventing him from introducing evidence of statements reportedly made by her at the Peer Review Panel meeting that supposedly were inconsistent with some of her statements made at the evidentiary hearing. Although Bar Counsel filed a response to Lee's exceptions requesting that his exceptions be overruled, no exceptions were taken by bar counsel to the hearing judge's findings of fact or conclusions of law. Bar Counsel seeks an indefinite suspension as the appropriate sanction for Lee's violations. (Footnotes omitted).

*Lee I*, 387 Md. at 99–102, 874 A.2d at 903–04.

As stated, *supra*, the hearing judge reviewed the new evidence taken with regard to Mr. Smith's receipt of written correspondence from Respondent and concluded that "the new evidence ha[d] no material effect upon the court's original Findings of Fact and Conclusions of Law" because she based her conclusions in large part upon earlier testimony and exhibits offered by Respondent which were not impeached by the remand proceeding. In reviewing the hearing judge's

findings of fact and conclusions of law, we shall take into account the new evidence, which established that certain pieces of "legal mail" emanating from Respondent's law office were received at the correctional facility and acknowledged as received by Mr. Smith on: 7 May 2001; 29 November 2001; 1 May 2002; 17 May 2002; 20 May 2002; 10 July 2002; and 19 July 2002.

## III.

We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Stolarz*, 379 Md. 387, 397, 842 A.2d 42, 47 (2004); *Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 274, 808 A.2d 1251, 1256 (2002). This deference accorded to the hearing judge's findings is appropriate, in part, because the fact finder is in the best position to assess the demeanor-based credibility of a witness. *Stolarz*, 379 Md. at 398, 842 A.2d at 48; *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999); *see also* Md. Rule 16–759(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). The hearing judge is permitted to "pick and choose which evidence to rely upon" from a conflicting array when determining findings of fact. *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000) (Citation omitted).

In deciding whether the hearing judge's findings of fact are clearly erroneous where exceptions are filed, this Court looks first to Md. Rule 16–759(b)(2)(B), which states that "the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b)." Under Md. Rule 16–757(b), where exceptions to findings of fact are filed by Bar Counsel, we consider that Bar Counsel, before the hearing judge, "ha[d] the burden of proving the averments of the petition by clear and convincing evidence." *See also Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 681, 802 A.2d 1014, 1025

(2002) ("Clear and convincing evidence must be more than a mere preponderance but not beyond a reasonable doubt.") (Internal quotations omitted) (Citations omitted). Thus, where the exceptions are filed to findings that were favorable to the Respondent attorney, under Md. Rule 16–757(b), we consider also that the attorney "who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence." [11] *See also Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 797 A.2d 757, 765 (2002) (stating that "an attorney in a disciplinary proceeding need only establish factual matters in defense of an attorney's position by the preponderance of the evidence, including whether mitigating circumstances existed at the time of the alleged misconduct").

## IV.

Based on our review of the record, we sustain one of Respondent's exceptions regarding a finding that Respondent failed to communicate with Mr. Smith for nearly two years. Despite sustaining that exception, we overrule Respondent's other exceptions and sustain the hearing judge's conclusions of law that Respondent violated MRPC 1.3, 1.4(a), 8.1(a), and 8.4(c).[12]

---

**11.** Md. Rule 16–710(d) states: "Factual findings shall be supported by clear and convincing evidence." We have previously addressed the relationship of Md. Rules 16–710(d) and 16–757(b):

[t]he 'clear and convincing' standard of Rule [16–710(d)] applies to the measure of proof imposed upon the Attorney Grievance Commission in factual determinations *essential to establishing its case against the attorney.* It does not apply to factual matters sought to be established by the attorney in defense of the attorney's position, including whether mitigating circumstances have been shown. As to this, the preponderance of the evidence standard is the applicable measure of proof.

*Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 99 n. 13, 797 A.2d 757, 765 n. 13 (2002) (Alteration in original) (quoting *Attorney Grievance Comm'n v. James,* 355 Md. 465, 483, 735 A.2d 1027, 1037 (1999) and *Attorney Grievance Comm'n v. Bakas,* 322 Md. 603, 606, 589 A.2d 52, 53 (1991)).

**12.** The hearing judge also concluded that Respondent did not violate MRPC 1.5 (attorney fees) or 1.16(d) (declining or terminating represen-

A.

■ As to the hearing judge's findings of fact relevant to the Rule 1.3 violation, Respondent excepted to the hearing judge's factual determinations that Respondent failed to (1) review personally, for nearly two years, the transcripts, pleadings and other documents delivered to his office by the Complainant; [13] (2) forward to the Complainant and Mr. Smith documentary results of any research, draft petition, Petition for Writ of Error, and a Motion to Correct Illegal Sentence, as promised in correspondence dated 4 May 2001, 28 November 2001, 15 May 2002, and 17 July 2002; (3) manage his case workload in a manner which would allow for the timely research, review, evaluation, and pursuit of the matters for which he was retained; and (4) "meet with or talk with Mr.

---

tation). Petitioner filed no exceptions to the Findings of Fact and Conclusions of Law. Hence, we shall not review the findings or conclusions regarding MRPC 1.5 or 1.16(d).

**13.** Respondent met with the Complainant, at her request and on behalf of her husband, on 9 January 2003 to discuss the case. The Complainant testified that Respondent appeared to be unfamiliar with case and that Respondent requested an additional month to review the case in order to recommend how the case should proceed. Respondent claimed that he was familiar with the case, but needed the additional time to review the documents because he wanted to explain why no post-conviction petition or other court proceeding could be pursued. According to the client ledger introduced into evidence by Respondent, the only activity involving a review of transcripts or other case materials by Respondent was the 6.5 hours spent reviewing the case documents and transcripts on 14 January 2003, nearly two years after the Complainant had paid the retainer fee.

The hearing judge found that "Respondent requested the additional month for 'review' because he had not been actively involved in the case, knew very little about it, and delegated responsibility for the review, research, client contact and day-to-day management of the client file to his part-time paralegal Lester V. Jones." The hearing judge further found that there was

no credible evidence that Respondent ever monitored the progress of the case file, performed a periodic review of the Smith file, set internal office time deadlines for the completion of work or made an independent assessment of the course of action, if any, to be taken on John Henry Smith's behalf before the meeting with Complainant on 9 January 2003. After nearly two years, Respondent finally met with the Complainant and began reviewing the transcripts.

Smith over nearly a two-year period." The hearing judge explicated specifically the basis for her factual findings in this regard by highlighting the testimonial evidence and exhibits offered by Respondent, Mr. Smith's testimony, and Petitioner's exhibits.

We find clear and convincing evidence on this record to support the hearing judge's findings in support of her conclusion that Respondent violated MRPC 1.3, except the blanket finding of fact that Respondent "[f]ailed to meet or talk with Mr. Smith over nearly a two-year period." We perceive that the hearing judge intended by the latter finding to mean that Respondent failed to *communicate* with his client for nearly a two-year period. This perception is based on the fact that MRPC 1.3 does not dictate the modality of communication that an attorney might employ when representing his client in a reasonably diligent and prompt manner. We conclude that this particular finding by the hearing judge was not supported by clear and convincing evidence, and was therefore clearly erroneous, in light of (1) the new evidence admitted at the September 2005 hearing that established that Mr. Smith received "legal mail" correspondence from Respondent on 7 May 2001, 29 November 2001, 1 May 2002, 17 May 2002, 20 May 2002, 10 July 2002, and 19 July 2002, and (2) Respondent's client ledger, which the hearing judge obviously and necessarily credited, indicating by notation that Respondent or his paralegal accepted collect telephone calls from Mr. Smith on the following dates: 6 April 2001 for 0.2 hours; 17 April 2001 for 0.2 hours; 4 May 2001 for 0.5 hours; 9 July 2001 for 0.2 hours; 1 November 2001 for 0.2 hours; 10 January 2002 for 0.2 hours. *See Attorney Grievance Comm'n v. Maignan,* 390 Md. 287, 295, 888 A.2d 344, 348–49 (2005).[14]

---

14. When deciding that Respondent failed to communicate with Mr. Smith for nearly a two-year period, the hearing judge chose to believe the testimony of Mr. Smith to that effect and Respondent's client ledger (which she perceived as indicating that when a telephone call placed by Mr. Smith was accepted by Respondent's office it was Lester Jones, the paralegal, that spoke with Mr. Smith) over the testimony of Respondent claiming that he had talked with Mr. Smith during that time period.

MRPC 1.3 provides that "[a] lawyer shall act with reason-able diligence and promptness in representing a client." We conclude that Respondent violated Rule 1.3 because he ne-glected his client's matter as evidenced by his failure to review case documents until nearly two years after he was retained, failure to manage his case workload in a manner which would allow for the timely research, review, evaluation, and pursuit of the matters for which he was retained, and failure to prepare any written pleadings or papers in the pursuit of the matter as promised to the client in correspondence.[15] *See Attorney Grievance Comm'n v. Lee* (*Lee II* ), 390 Md. 517, 526, 890 A.2d 273, 278 (2006) (concluding in another case that

Respondent excepted, stating that the client ledger was incomplete and therefore the absence of an indication that Respondent, rather than his staff, talked with Mr. Smith should not be determinative. Respondent, however, cited no specific dates that he spoke personally with Mr. Smith on the telephone.

Despite the failure of Respondent to note specific dates that he spoke with Mr. Smith on the telephone, we observe that the client ledger, in fact, does indicate by notation that Respondent accepted collect tele-phone calls from Mr. Smith on the following dates: 6 April 2001 for 0.2 hours; 17 April 2001 for 0.2 hours; 4 May 2001 for 0.5 hours; 9 July 2001 for 0.2 hours; 1 November 2001 for 0.2 hours; 10 January 2002 for 0.2 hours. The hearing judge conceded also that Respondent spoke with Mr. Smith at least on these latter three occasions.

We note also that the hearing judge implicitly accepted as credible in her original evidentiary findings that Respondent sent correspondence, which Mr. Smith received, dated 4 May 2001, 28 November 2001, 15 May 2002, and 17 July 2002, because she found that Respondent failed to forward to Mr. Smith or Complainant the results of pleadings or papers promised in that correspondence.

15. On 29 April 2002, Respondent sent a letter to the Maryland Parole Commission requesting a parole hearing for Mr. Smith, which was noted for June 2002. Mr. Smith, however, requested an indefinite postponement of the parole hearing when he met with the Division of Corrections case manager on 30 May 2002. The hearing judge also noted the Complainant's testimony that she disagreed with the pursuit of a parole hearing before the 2002 Gubernatorial election, citing then—Governor Parris N. Glendening's well-established "life means life" policy for violent offenders, an accurate description of Mr. Smith's reason for incarceration. Despite Respondent's single letter to the parole commission in April 2002, we conclude that for the reasons indicated, *supra,* Respondent violated MRPC 1.3 by largely neglecting his client's case over the two year representation.

Respondent displayed lack of diligence in violation of MRPC 1.3 by neglecting his client's legal matter for almost one year, during which Respondent filed no pleading, nor indicated to his client that there was no basis to do so).

## B.

The hearing judge concluded that Respondent violated MRPC 1.4(a) in several respects. She found that Respondent failed to respond to many telephone calls placed by Mr. Smith requesting information regarding the status of matters for which Respondent was retained. The hearing judge based this finding of fact upon the testimony of Mr. Smith and Respondent and the client ledger introduced by Respondent.[16] According to the client ledger, the hearing judge found that

---

**16.** Respondent claims that the hearing judge "place[d] too much emphasis" on the client ledger that he offered as Exhibit 16:

The ledger was admitted for purposes of addressing Respondent's alleged misconduct, in violation of Rule 1.5(a), that he charged and retained an unearned and therefore unreasonable fee in the amount of $3,500; also, it was admitted to explain the alleged misconduct in violation of Rule 1.16(d), by failing to refund a significant portion, not all of the $3,500 fee received upon termination of representation. Respondent testified at trial that because he had accepted [Mr.] Smith's case on a flat fee basis, that he did not keep as detailed time records with regard to that representation. Therefore, after hearing at the Peer Review Committee from [Bar Counsel] and Complainant, that "nothing" had been done at all in Respondent's representation of Smith, he directed his secretary to document all phone calls, correspondence to and from Complainant and [Mr.] Smith, correspondence to Warden Galley, the Maryland Parole Commission, letters to attorneys involved in representation of [Mr.] Smith and his codefendent in 1972, etc. Respondent's secretary did so, putting estimated time to those documented events, which are reflected in the client ledger admitted as Respondent's Exhibit 16. Respondent further testified that this client ledger did not include a lot of other time expended by Respondent and his paralegal that could not be definitely documented by phone logs or other correspondence.
The client ledger, like the testimony offered by Mr. Smith, the Complainant, and Respondent at the earlier hearing, was evidence for the hearing judge to consider as part of her fact-finding undertaking. We give due regard to the hearing judge to assess the credibility of witnesses. We permit the hearing judge to choose which evidence to rely upon from a conflicting array. We shall not overrule the hearing judge's findings of fact here as they were supported by the client ledger.

Mr. Smith placed a total of 188 collect calls to Respondent's law office between 16 March 2001 and 17 June 2003. Thirty-five calls were accepted by Respondent's office and, of those accepted, only eleven calls were of a duration of seven minutes or more. On 4 May 2001, 1 August 2001, and 10 October 2001, Respondent's law office accepted Mr. Smith's collect calls, and, according to Respondent's client ledger, the hearing judge found that Mr. Smith spoke with Respondent's paralegal, Lester Jones, not Respondent, on those dates. The hearing judge highlighted that, according to the client log, Respondent only spoke with Mr. Smith on three occasions—9 July 2001, 11 November 2001, and 10 January 2002—for a collective total of seven minutes.

Respondent excepted to the finding that he did not respond to Mr. Smith's telephone inquiries about the case, stating that Mr. Smith participated in on-going discussions with Mr. Jones, and that Respondent spoke with Mr. Smith on several occasions using the speaker-phone function on his paralegal's telephone, noting his own testimony to that effect (although he did not identify the particular occasions in addition to the three occasions noted in the client ledger). Respondent also indicated that he visited Mr. Smith on 11 January 2003, nearly two years after the representation began.

As stated, *supra*, we sustained Respondent's exception to the hearing judge's "blanket" finding that Respondent failed to communicate with Mr. Smith for nearly a two-year period in part because we observed that the client ledger admitted at the original evidentiary hearing (and relied upon by the hearing judge in her findings) indicated by notation that Respondent accepted collect telephone calls from Mr. Smith on the following dates: 6 April 2001 for 0.2 hours; 17 April 2001 for 0.2 hours; 4 May 2001 for 0.5 hours; 9 July 2001 for 0.2 hours; 1 November 2001 for 0.2 hours; 10 January 2002 for 0.2 hours. Thus, we find that the hearing judge's somewhat contradictory finding that Respondent did not speak with Mr. Smith on 4 May 2001 is not supported by clear and convincing evidence. Even so, the evidence that Respondent or his paralegal accepted six collect telephone calls from Mr. Smith over the

course of the representation is not sufficient, however, to overrule the hearing judge's finding of fact that Respondent failed to respond to the repeated telephone calls by Mr. Smith requesting information regarding the status of matters for which Respondent was retained. The ledger does not indicate the topic of discussion during any accepted phone calls. We therefore sustain this finding.

The hearing judge also made a finding of fact that, for a three-week period, Respondent failed to respond to the Complainant's repeated requests for the return of transcripts and papers on behalf of Mr. Smith. Respondent excepted, stating that this finding of fact was based on the Complainant's original grievance to the Commission and was not addressed specifically at the earlier evidentiary hearing. Respondent contends that, had he been questioned about the issue during the hearing, he would have testified that the transcripts and papers were available to the Complainant to pick up from his office, which she eventually did, after cancelling several appointments, due to conflicts in her schedule. Contrary to Respondent's non-testimonial assertions, we note that the Complainant's grievance was received by the hearing judge as Petitioner's Exhibit 1. We overrule this exception.

As stated previously, we sustain the finding of fact that Respondent failed to forward to Mr. Smith or the Complainant the documentary results of any research, draft petition, Petition for Writ of Error, and a Motion to Correct Illegal Sentence, as promised in correspondence dated 4 May 2001, 28 November 2001, 15 May 2002, and 17 July 2002.

In further support of the conclusion that Respondent violated MRPC 1.4(a), the hearing judge determined that Respondent failed to respond to the Complainant's written requests for information about the case in letters dated 14 July 2002 and 22 October 2002, and failed to forward to the Complainant the results of any research or production of any pleading drafts.[17] Respondent excepted to the finding that he did not

---

17. Respondent excepts, stating that Mr. Smith was his client; "therefore [he] was not aware of the need to discuss anything with the

respond to the Complainant's written requests for information about the case, asserting that he could not find any letter dated 14 July 2002 (implying that it did not exist) and that Respondent replied to the 22 October 2002 letter by meeting with the Complainant on 9 January 2003, nearly three months later. We observe that Respondent introduced evidence indicating that Lester Jones sent a letter to the Complainant on 17 July 2002 in which he acknowledged the Complainant's letter dated 14 July 2002, but provided no information regarding the status of the case, except to state that "there were several options available that we were considering filing." We note too that, according to Respondent's 20 June 2003 letter, he told the Complainant at the 9 January 2003 meeting that he needed more time to review the transcripts and related papers before he could inform her about the status of the case. We overrule his exception.

MRPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. Accord-

---

Complainant until she asked for her one and only meeting." He noted that his secretary directed the Complainant's telephone calls to Lester Jones throughout the representation. In *Attorney Grievance Comm'n v. Lee* (*Lee II*), 390 Md. 517, 890 A.2d 273 (2006), we concluded that Respondent violated Rule 1.4 when he failed to communicate with his client, who was incarcerated at the time of representation, or his client's mother, the person who paid the attorney's fees and contacted Respondent several times over the course of representation with inquiries about her son's case:

> After execution of the retainer agreement and payment of the retainer fee, all communication on the part of Mr. Lee essentially stopped. There were inquiries from Mrs. Coleman on behalf of her son, [the client,] but the only response from Mr. Lee was a delayed response that was not very meaningful. If Mr. Lee did not intend to communicate with his client through his mother, he could have explained that to the client. Having failed to do so, the course of dealings with [the client] suggested that Mr. Lee would respond to [the client] through his mother. Therefore, we sustain the Petitioner's exceptions and conclude that violation of Rule 1.4 was proven by clear and convincing evidence.

*Lee II*, 390 Md. at 526, 890 A.2d at 278. In the present case, Respondent's course of conduct with Mr. Smith indicates that Respondent would communicate with Mr. Smith through his wife, the Complainant.

ing to the sustained findings of fact, *supra*, Respondent sent seven letters to Mr. Smith over the course of the nearly two-year representation. Respondent did not meet with his client until nearly two years after payment of the retainer fee. Respondent failed to respond promptly or meaningfully to many of Mr. Smith's telephonic inquiries about the case. Respondent failed to produce written attorney work product as promised in correspondence to Mr. Smith. Respondent also failed to respond to the Complainant's requests for the return of transcripts and papers on behalf of her husband for over a three-week period. Respondent failed to respond meaningfully to either the 14 July 2002 letter or her 22 October 2002 letter, both of which were written requests for information from the Complainant on behalf of her husband.

We conclude that, based on these sustained findings of fact, Respondent failed to keep Mr. Smith reasonably informed of the status of his case and failed to respond promptly or meaningfully to his client's reasonable requests for information, in violation of MRPC 1.4(a).[18]

---

**18.** The hearing judge also found that Respondent failed to "meet with or talk" to the Complainant from 21 April 2001 until 9 January 2003 based upon the Complainant's testimony and the client ledger. Respondent excepts to this finding, claiming that he courtesy-copied to the Complainant correspondence sent to Mr. Smith. Respondent points to the new evidence admitted at the September 2005 hearing, which established through the use of mail log books kept by staff of the correctional facility, that Mr. Smith received letters from Respondent on 7 May 2001, 29 November 2001, 1 May 2002, 17 May 2002, 20 May 2002, 10 July 2002, and 19 July 2002. Respondent asserts that, if Mr. Smith received the letters, then it can be inferred that the Complainant received copies as well. The hearing judge, however, was not required to draw that inference, in the face of the Complainant's testimony to the contrary.

In addition, Respondent asserts that the Complainant neither testified that she had requested any meetings before her October 2002 letter nor placed phone calls to Respondent's office that were not returned. Respondent claims also that the Complainant talked with members of Respondent's office staff often, as the Complainant testified, "Mr. Jones always followed through with things I asked him about." We need not resolve this exception because we conclude, based upon the other sustained findings of fact regarding the state of Respondent's communications with Mr. Smith, that Respondent violated MRPC 1.4(a) regardless.

## C.

■ The hearing judge concluded that Respondent violated MRPC 8.1(a) and 8.4(c) based upon her findings of fact that Respondent misrepresented to Bar Counsel that the cause for his delay in pursuing the legal matter for which he was retained was due to the unavailability of transcripts and that the Complainant was tardy in delivering case materials to Respondent:

> The court finds that in his letter dated June 20, 2003, the Respondent knowingly misrepresented to the [Attorney Grievance] Commission that the reason for the delay in pursuing Smith's case was due to the lack of available transcripts for review. [ (Petitioner's Exhibit 3)] He also stated that the Complainant "eventually" delivered "a box full of transcripts, pleadings, Memorandums of Law and voluminous research materials"—falsely implying that these documents were delivered to his office much later than April 21, 2001. (Petitioner's Exhibit 3) He knew this statement was a misrepresentation because he had acknowledged receipt of the same documents in his May 4, 2001 letter to Mr. Smith (Respondent's Exhibit 1).

Respondent excepted to these findings of fact, claiming that he never represented to the Commission that the reason for the delay was the lack of available transcripts for review and that this Court should consider his testimony that "without those transcripts, he was not prepared to file what would be perceived to be as *another* frivolous motion for post-conviction relief. . . ." (Emphasis in original). Respondent asserts that "it was not Respondent's intention to mislead anyone in his initial response to Complainant's complaint," but that the letter expressed his best recollection at the time he wrote the letter.

■ MRPC Rule 8.1(a) provides that a lawyer, in connection with a disciplinary matter, shall not "knowingly make a false statement of material fact." MRPC Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresenta-

tion." A finding of deceit and misrepresentation in a disciplinary action must be found to be intentional, supported by clear of convincing evidence. *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 78–79, 753 A.2d 17, 28–29 (2000) (citing *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 474 (1996) and *Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990)).

In *Mooney*, we concluded that the evidence did not support a finding that Respondent violated MRPC 8.1 or 8.4(c) when he told the Bar investigator that he *believed* the case had been assigned to an associate in his office. *Mooney*, 359 Md. at 79–81, 753 A.2d at 29–30. Respondent explained that he had made this statement to the Bar investigator because he knew that the case was set in Prince George's County and assumed that a particular associate who was usually assigned cases in that county would handle it. *Mooney*, 359 Md. at 79, 753 A.2d at 29. Respondent also acknowledged that he had no specific knowledge that the particular associate did, in fact, handle it. *Id.* We therefore determined that clear and convincing evidence did not support a finding that Respondent made intentional false representations to the Bar investigator when it was later revealed that the associate had not been assigned the case at issue. *Id.*

In contrast to the equivocal statement made by the respondent to the Bar investigator in *Mooney*, the respondent in *Attorney Grievance Commission v. Kapoor*, 391 Md. 505, 894 A.2d 502 (2006), made an unequivocal statement of fact to Bar Counsel, which was proven at the evidentiary hearing to be false. In *Kapoor*, we adopted the hearing judge's conclusion of law that a respondent violated MRPC 8.1(a) where the respondent communicated to the Commission during a disciplinary investigation that his client never tendered a $50 check. *Kapoor*, 391 Md. at 524, 530, 894 A.2d at 507, 513–14. The statement constituted a material fact and the attorney was aware of the falsity of the statement because he had accepted the tendered check and deposited it into his personal account. *Kapoor*, 391 Md. at 524, 894 A.2d at 507.

In the present case, we overrule the exception because clear and convincing evidence supports the hearing judge's findings of fact that Respondent intentionally misled the investigator by implying, through emphatic statements of fact, that the reasons for the case's delay was due to unavailable transcripts and the Complainant's late delivery of transcripts, which if believed by Bar Counsel, may have caused the Complaint to be dismissed. In his 20 June 2003 letter to the Commission, Respondent stated:

> We attempted to secure transcripts of the proceedings in Harford, Cecil and Kent Counties; however, due to the many years since these cases were tried in the early 1970's, the transcripts were not available from either the Courts, the prosecuting attorneys, or the defense attorneys and Public Defenders. Mrs. Smith did eventually provide a box full of transcripts, pleadings, Memorandums of Law, and voluminous research materials that John Henry Smith had used in his many appeals and Petitions for Post Conviction Relief.

> From March, 2001 until September, 2002, there was much correspondence to and from my office regarding all of the above-referenced matters. In September, 2002, the paralegal assigned to this matter was admitted to a local hospital for what had been anticipated to be a routine surgical procedure. There were apparent complications as a result this [sic] medical procedure and he was put on a respirator for six weeks and then was required to remain [sic] bed rest for several months thereafter during his recovery. Thereafter, he never returned to work for me.

> I met with Mrs. Smith in my office in January, 2003, to discuss the status of her husband's case. While Mrs. Smith had understood that there had not been much progress during my paralegal's medical difficulties, she was anxious that someone else be assigned the matter. I explained that I was in the process of interviewing paralegals; however, that I would review all the materials in my possession but that I needed at least a month to make any significant progress given the voluminous nature of the materials and

the fact that I was extremely busy due to his (paralegal's) absence from the office. She agreed with my proposal. Respondent's letter to the Commission offers several possible reasons/representations for the lack of activity in the case: unavailable transcripts; the Complainant "eventually" delivering a box of transcripts (the letter is unclear as to whether the box the Complainant delivered contained the "unavailable transcripts") and case materials to Respondent that, the hearing judge found, Respondent did not review until January 2003; the voluminous nature of the case materials; and Respondent's paralegal's absence from September 2002 up to the 9 January 2003 meeting. As revealed by the hearing judge's previously sustained findings, the true reason for inactivity in the case was Respondent's failure personally to review the case materials for two years and his failure to manage his case workload in a manner that would allow for the timely research, review, evaluation, and pursuit of the matters for which he was retained—not any unavailable transcript or "voluminous" box of case materials.[19] Moreover, Respondent

---

**19.** We note that Respondent's theory of the case and reasons for his inactivity shifted throughout his representation of Mr. Smith, as well as during Bar Counsel's investigation. The hearing judge considered Respondent's testimony and other evidence regarding Respondent's theory of the case:

> Respondent testified that he requested the parole hearing in April 2002 after a review of Smith's original convictions, the various post conviction hearings, the issues raised in those proceedings and the court decisions in those proceedings. As a result, by April 2002, Respondent said that he had concluded that Smith's best hope for a release from commitment would be through a parole hearing—after the election of a new governor.

The hearing judge noted evidence presented at the hearing that contradicted Respondent's claim that he evaluated the file, concluded that parole was the only viable option, and discussed his conclusion with Mr. Smith. In contradiction to Respondent's testimony, Mr. Smith testified that he never spoke with Respondent by telephone. The client log of case activity neither reflect any calls to Mr. Smith about the parole option nor activity involving review of transcripts at that time. Letters from Respondent to Mr. Smith dated after April 2002 reflect that Respondent would proceed with a Petition for Writ of Error (letter dated 15 May 2002), there were "several options available . . . including but not limited to the filing of a Motion to Correct Illegal Sentence," (letter dated 17 July 2002). Lester Jones gave the Respondent a

intentionally misrepresented the time period when the Complainant delivered the single box of transcripts and case materials because he acknowledged receipt of the materials from the Complainant in April 2001 in a letter dated 4 May 2001. We therefore conclude that Respondent violated MRPC 8.1(a) and 8.4(c) by misrepresenting his reasons for inactivity in Mr. Smith's case.

## V.

 The purpose of sanctions is to protect the public, protect the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Rules of Professional Conduct. *Attorney Grievance Comm'n v. Cassidy*, 362 Md. 689, 698, 766 A.2d 632, 637 (2001). The purpose is not to punish the errant attorney. *Id.; Lee II*, 390 Md. at 527, 890 A.2d at 279. "The severity of the sanction to be imposed in any particular case depends upon the individual facts and circumstances, taking into account any aggravating or mitigating factors." *Cassidy*, 362 Md. at 699–700, 766 A.2d at 637 (Citations omitted). In determining the appropriate sanction, we consider also whether the attorney has been disciplined in the past. *Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 460, 823 A.2d 611, 624 (2003); *Cassidy*, 362 Md. at 700, 766 A.2d at 637–38 (citing *Attorney Grievance Comm'n v. Manning*, 318 Md. 697, 704–05, 569 A.2d at 1250, 1254 (1990)). "Moreover, an attorney's voluntary termination of the misconduct, accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, has been viewed as evidence that the attorney will not thereafter engage in such unethical conduct if permitted to continue practice." *Attorney Grievance Comm'n v. Jeter*, 365 Md. 279, 291, 778 A.2d 390, 397 (2001). Petitioner recommends an indefinite suspension.

memorandum on 11 December 2002 recommending that Respondent file a Writ of Review to Vacate Judgment. Respondent sent two letters on 15 May 2002 to attorneys requesting assistance in obtaining a transcript.

In *Attorney Grievance Commission v. Granger, supra,* 374 Md. at 460, 823 A.2d at 624, we sanctioned an attorney with indefinite suspension, with permission to reapply no sooner than six months, where he violated MRPC 1.1, 1.2, 1.3, 1.4, 8.1, and 8.4 in connection with a bankruptcy representation. Based upon the sustained findings of fact in *Granger,* we held that "Respondent misrepresented the facts to Bar Counsel and to the hearing judge in his statements regarding that which he told [the Complainant] she needed to do prior to her filing her [bankruptcy] petition and regarding her representation generally." *Granger,* 374 Md. at 458, 823 A.2d at 623. The disciplinary proceedings at issue in *Granger* were the first proceedings brought against that respondent and the charges stemmed from his representation of one client. *Granger,* 374 Md. at 461, 823 A.2d at 625. We also noted in *Granger* that, although the respondent was untruthful to Bar Counsel, the respondent was remorseful, refunded the client's $200 fee, and offered to rectify the situation free of charge. *Id.*

In *Attorney Grievance Commission v. Cohen,* 361 Md. 161, 760 A.2d 706 (2000), we sanctioned an attorney with indefinite suspension, with the right to reapply no earlier than six months, for violations of MRPC 1.1, 1.3, 1.4, 8.1(a), and 8.4(c) and (d). Among other misconduct, the attorney failed to inform several clients of the status of their respective cases and had made false representations to a client and Bar Counsel about having refunded all unearned fees in one case. *Cohen,* 361 Md. at 166–67, 174–75, 760 A.2d at 709, 713–14.

■■■ Similar to the respondents in *Granger* and *Cohen,* Respondent violated MRPC 1.3, 1.4, 8.1(a), and 8.4(c). The intentional dishonesty committed by Respondent in his communication with Bar Counsel makes a reprimand inappropriate. *See Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001) ("Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond ex-

cuse."). The hearing judge found no mitigating factors here. Nor do we. Respondent presents no evidence of remorse or appreciation of the serious impropriety of his conduct. On 12 January 2006, we issued a public reprimand for Respondent's violation of MRPC 1.3 and 1.4 when representing a client seeking post conviction relief, thus indicating a systematic violation of the Rules of Professional Conduct. *Lee II*, 390 Md. at 526, 890 A.2d at 278. We therefore conclude that the facts of the present case make appropriate an indefinite suspension.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NORMAN JOSEPH LEE, III.